**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DENISE ACEVEDO,

Plaintiff,

v. Case No. 8:23-cv-2801-LSG

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
_______________________________/

**MEMORANDUM OPINION AND ORDER**[1]

The plaintiff Denise Acevedo appeals the denial of her claim for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI"). Docs. 1, 16. Because I find that the Administrative Law Judge's evaluation of Acevedo's migraine headaches and fibromyalgia impairments failed to comply with the law and lacked substantial evidence, I reverse the Commissioner's decision and remand this case to the Commissioner for further proceedings.

## I. Procedural Background

In March 2021, Acevedo applied for a period of disability, disability insurance benefits, and supplemental security income and alleged that her disability began on January 20, 2020. Doc. 16 at 1; Tr. 288–94, 295–309. The Commissioner denied Acevedo's claims initially and on reconsideration. Tr. 164, 169, 176, 181. Acevedo

[1] The plaintiff consents to the exercise of jurisdiction by a United States Magistrate Judge. Doc. 1.

requested an administrative hearing, which occurred on June 7, 2023. Tr. 39, 184–85, 224–28. Acevedo appeared and testified. Tr. 42–53. The ALJ's decision after the hearing was unfavorable. Tr. 7–25. Acevedo appealed the ALJ's decision to the Appeals Council. Tr. 272–75. The Appeals Counsel found no error in the ALJ's decision and informed Acevedo that the decision would be final pending appellate review. Tr. 1–6. Acevedo timely filed a complaint in this Court, Doc. 1, and the case is ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. Factual Background and the ALJ's Decision

Born in 1977, Acevedo was forty-two years old when her alleged disability began. Tr. 23, 295. Her impairments include osteoarthritis, psoriatic arthritis, fibromyalgia, migraine headaches, obesity, and anxiety disorder. Tr. 13. Acevedo has a high school education. Tr. 23, 327. Her occupational history includes working as a bookbinder, commercial cleaner, short-order cook, waitress, and cashier. Tr. 23, 327–28.

The ALJ concluded that Acevedo satisfies the insured status requirements of the Social Security Act through December 31, 2022, and that she has not engaged in any substantial gainful activity since her alleged onset date of January 20, 2020. Tr. 13. After a telephonic hearing and reviewing the evidence, the ALJ determined that Acevedo has severe impairments, including osteoarthritis, psoriatic arthritis, fibromyalgia, migraine headaches, obesity, and anxiety disorder. Tr. 13. Nonetheless, the ALJ determined that Acevedo suffers no impairment or combination of impairments that "meets or medically equals" the severity of the listed impairments in 20 C.F.R. Part

104, Subpart P, Appendix 1. Tr. 13. The ALJ concluded that Acevedo has a residual functional capacity to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the exception that "she can frequently reach overhead bilaterally; occasionally climb stairs, ramps, ladders, ropes, and scaffolds, as well as balance, stoop, kneel, crouch, and crawl; and have frequent exposure to loud noise, extreme cold, vibrations, and dusts, chemicals, and fumes" and that she "can understand, remember, and carry out simple instructions," "concentrate, persist, and maintain pace," and "perform simple, repetitive tasks with no production-type quota or quota-driven type work, such as assembly lines." Tr. 16.

In formulating Acevedo's residual function capacity, the ALJ considered "all symptoms and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical and other evidence," medical opinions, and prior administrative findings. Tr. 16. The ALJ nowhere indicates whether she considered Acevedo's testimony or function reports. *See* Tr. 16. The ALJ found that Acevedo's medically determinable impairments "could reasonably be expected to cause" the alleged symptoms. Tr. 17. However, the ALJ concluded that Acevedo's statements concerning her symptoms' intensity, persistence, and limiting effects were "not entirely consistent with the medical evidence" and record. Tr. 17, 19. The ALJ explained that the "evidence that shows that despite her history of rheumatological conditions, [Acevedo] has been found to have normal appearance and range of motion" in her back and extremities, "no spinal kyphosis or scoliosis," "normal gait and posture," "no spasm or tenderness" of her spine, "no muscle weakness or asymmetry," "normal sensory"

responses and reflexes, and a "gait within normal limit." Tr. 19. In addition, the ALJ noted that Acevedo "does not require the use of a brace for her back" and, although "she alleged the need for a cane or walker," the record presents no evidence that a medical provider prescribed either. Tr. 19. Regarding Acevedo's mental health, the ALJ similarly found that the "mental status examinations have failed to reveal any objective formal thought or psychotic disorder" despite Acevedo's reports of anxiety, cognitive deficits, and auditory hallucinations. Tr. 18, 19.

The ALJ found that Acevedo was unable to perform any past relevant work and could not return to any of her previous jobs. Tr. 23. Based on the testimony of a vocational expert, the ALJ concluded that Acevedo could return to work and perform the functions of a "merchandise maker," a "collator operator," and a "photocopy machine operator." Tr. 24. Thus, based on Acevedo's age, education, work experience, residual functional capacity, and the testimony of a vocational expert, the ALJ determined that Acevedo is not disabled. Tr. 24–25.

## III. Standard of Review

Entitlement to SSDI benefits requires a "disability," meaning the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" likely to result in death, lasting for at least twelve months, or expected to last more than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" means a condition resulting from "anatomical, physiological, or psychological abnormalities . . . demonstrable by

medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3); 1382c(a)(3)(D).

Social Security Administration ("SSA") regulations establish a five-step "sequential evaluation process" to determine whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). The ALJ must determine whether the claimant (1) is engaged in "substantially gainful activity," (2) has a severe impairment, (3) has a severe impairment that "meets or equals" the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) can perform the claimant's past relevant work, and (5) can perform other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant may obtain benefits only if unable to perform other work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

This Court must affirm if substantial evidence and applicable law support the Commissioner's decision. 42 U.S.C. §§ 405(g), 1383(c)(3); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted). "Substantial evidence" means that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner's factual findings receive deference, but the legal conclusions receive "close scrutiny." *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

"When deciding whether the ALJ's decision is supported by substantial evidence, the court must view the record as a whole, considering evidence favorable

and unfavorable to the Commissioner." *Hill v. Comm'r of Soc. Sec.*, No. 2:24-CV-64-KCD, 2024 WL 4719493, at *1 (M.D. Fla. Nov. 8, 2024) (citing *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995)). A reviewing court may not find facts, weigh evidence, or substitute its judgment for the ALJ's, even if the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, the Commissioner's failing either to apply the law correctly or to provide sufficient legal analysis mandates reversal. *Keeton*, 21 F.3d at 1066. Thus, the scope of review is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standard. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## IV. Analysis

Acevedo argues on appeal that the ALJ erred by failing to consider her migraine headaches under SSR 19-4p in step three of her sequential evaluation and by failing to consider the total limiting effect of her fibromyalgia impairment under SSR 12-2p. Doc. 16 at 1. Acevedo also challenges the ALJ's determination of her "residual function capacity" and claims that the ALJ omitted certain limitations. Doc. 16 at 1. The Commissioner argues in response that the ALJ properly considered all evidence when evaluating Acevedo's migraine headaches and properly assessed Acevedo's RFC with record evidence. Doc. 20 at 5. The Commissioner further argues that the ALJ properly considered the combined effect of Acevedo's

impairments while evaluating the medical source opinions for Acevedo's RFC. Doc. 20 at 15.

At step three of the "sequential evaluation process," the ALJ considers whether the claimant's impairments equal the severity a listed impairment in 20 C.F.R. Part 404, subpart P, Appendix 1. If an impairment "meets or medically equals" a listed impairment, the claimant is presumptively disabled. 20 C.F.R. § 404.1525(a). The claimant bears the burden of proving the existence of a listed impairment. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *Martel v. Colvin*, No. 2:24-cv-254-JRK, 2025 WL 259344, at *3 (M.D. Fla. Jan. 22, 2025). To "meet or equal" a listed impairment, the diagnosis of an impairment is not enough; a claimant must demonstrate a diagnosis provided for in the listings and submit medical records satisfying the criteria described in the listing. *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002). At a minimum, the claimant's medical records must show an impairment of equal severity and duration. *Id*.

However, "[s]evere impairments do not necessarily result in specific functional limitations." *Owens v. Colvin*, No. 3:15-cv-409, 2015 WL 12856780, at *2 (M.D. Fla. Oct. 15, 2015). "If no specific functional limitations from a severe impairment exist, the ALJ need not include a corresponding limitation for that impairment in the RFC." *Id.*; *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x. 260, 263–64 (11th Cir. 2009) (finding the ALJ did not err because the ALJ's decision explained that the claimant's obesity impairment "was ultimately determined not to result in any specific functional limitations."); *Davis–Grimplin v. Comm'r, Soc. Sec.*, 556 F. App'x. 858, 863

(11th Cir. 2014). Further, the ALJ need not cite each listed impairment that she considered. *Gray ex rel. Whymss v. Comm'r of Soc. Sec.*, 454 F. App'x. 748, 750 (11th Cir. 2011). An ALJ may imply that a claimant's impairments neither "meet" nor "equal" a listed impairment. *Id.*; *see also Rice v. Comm'r of Soc. Sec.*, No. 8:23-cv-02639-CEH-NHA, 2024 WL 4993583, at *5 (M.D. Fla. Nov. 20, 2024), *R & R adopted*, 2024 WL 4989415 (M.D. Fla. Dec. 5, 2024). However, the ALJ must, at a minimum, provide enough for a meaningful review of her analysis and conclusion. *Gray ex rel. Whymss*, 454 F. App'x at 750; *Keeton*, 21 F.3d at 1066.

The ALJ's findings between steps three and four include her determination of Acevedo's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 416.920(a); Tr. 16–22. A person's "residual functional capacity is the most [the person] can still do despite [the person's] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). This assessment evaluates "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," which means "8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling ("SSR") 96-8P, 1996 WL 374184, *1 (S.S.A. Jul. 2, 1996). An ALJ must determine a claimant's RFC by considering all relevant medical and other evidence, including evidence as to what a person can do in a work setting despite physical or mental limitations caused by the person's impairments and related symptoms. *Jensen v. Comm'r of Soc. Sec.*, No. 21-13324, 2022 WL 2663585, at *3 (11th Cir. July 11, 2022); *Semidey v. Kijakazi*, No. 8:20-cv-2310-AEP, 2022 WL 4464840, at *3 (M.D. Fla. Sept. 26, 2022) (citing 20 C.F.R. §§ 404.1545(a)(1),

416.945(a)(1)). To determine a person's residual functional capacity, the ALJ should evaluate (1) all medical opinions, together with the other record evidence and (2) all medically determinable impairments, including those that are not severe, and the total limiting effects of each. *Id.* (citing 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e), 416.920(e), 416.945(a)(2) & (e)).

**A. The ALJ failed to evaluate whether Acevedo's migraines medically equaled a listing in accord with SSR 19-4p.**

Although no listing applies directly to migraines or headache disorders, the Social Security Rulings explain that an ALJ "may find that a primary headache disorder, alone or in combination with another impairment(s), medically equals a listing." SSR 19-4p, 2019 WL 4169635 (Aug. 26, 2019). Social Security Ruling SSR 19-4p instructs that an ALJ should evaluate headache disorders under listing 11.02. *Id*. Thus, under SSR 19-4p, "[a] migraine impairment can be functionally equivalent to Listing 11.02B if severe headaches or migraines occur 'at least once a week for three consecutive months despite adherence to prescribed treatment.'" *Rice*, 2024 WL 4993583, at *5–*6. To analyze a claimant's headache disorder under the criteria of Listing 11.02B, the ALJ must consider

> (1) a medical source's description of Plaintiff's migraines, including their duration, intensity, and accompanying symptoms, (2) the frequency which with Plaintiff's migraines occurred, (3) whether Plaintiff adhered to his prescribed treatment, (4) whether Plaintiff suffered from any side effects of treatment, and (5) whether the migraines interfered with Plaintiff's with activity during the day.

*Rice*, 2024 WL 4993583, at *5 (summarizing SSR 19-4p, 2019 WL 4169635, at *7). Similarly, a migraine impairment may be functionally equivalent to Listing 11.02D if

a claimant's migraines occur at least once every two weeks for at least three consecutive months despite treatment. *Id.* at 6. Thus, to analyze the medical equivalence of a claimant's migraines to listing 11.02D, the ALJ must consider the frequency of the migraines, the claimant's adherence to any prescribed treatment, and "whether the migraines caused the plaintiff to have a marked limitation in physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself." *Rice*, 2024 WL 4993583, at *6 (quoting SSR 19-4p, 2019 WL 4169635, at *7); *Martel*, 2025 WL 259344, at *3.

After a careful review of the ALJ's decision and the record, I find that the ALJ failed to evaluate whether Acevedo's migraines medically equaled the criteria of Listing 11.02B or 11.02D. In her decision, the ALJ identifies "migraine headaches" as a medically determinable impairment that "significantly limit[s] [Acevedo's] ability to perform work activities as required by SSR 85-28" at step three. Tr. 13. But the ALJ concludes that Acevedo "does not have an impairment or combination of impairments that meets or medically equals the severity of" a listing. Tr. 13. To reach that conclusion, the ALJ explains that she gave "particular consideration" to Acevedo's physical impairments compared to the neurological disorder listing on inflammatory arthritis. Tr. 13. The ALJ then explains that "there is no evidence of persistent inflammation or persistent deformity" of Acevedo's extremities or evidence indicating her dexterity-based impairments present any marked limitations or symptoms affecting Acevedo's daily life. Tr. 13–14. The ALJ explains that she

considered SSRs 12-2p, 14-2p, and 19-2p "when evaluating the severity of [Acevedo's] fibromyalgia, diabetes, and obesity impairments," Tr. 14, but ultimately found that Acevedo failed to establish that her impairments met or equaled any listing because "no acceptable medical source" or evidence supported such a finding.[2] Tr. 14.

The ALJ does not discuss Acevedo's migraines in her analysis at step three. Further, the ALJ does not describe or consider any medical records or descriptions of Acevedo's migraines or their frequency in determining whether Acevedo suffers from a listing-level impairment. The ALJ says that no medical source or subsequent evidence shows that Acevedo's impairments equal a listed impairment. Tr. 14. However, that conclusion omits record evidence showing that Acevedo indeed suffered from severe migraine headaches, including symptoms of nausea and sound sensitivity, almost weekly from the alleged onset of her disability. Tr. 49, 54, 401, 557, 639–40, 792–98.[3] Under listing 11.02, Acevedo needed only to show that she suffered a severe headache once a week for three months despite medical treatment for consideration. *See* SSR 19-4p, 2019 WL 4169635, at *7. Therefore, contrary to

[2] Interestingly, while discussing Acevedo's RFC at step four, the ALJ briefly mentions that Acevedo underwent an MRI "[i]n terms of her migraine headaches" after reporting "daily headaches" in January 2022. Tr. 18. However, the opinion contains no further mention of treatment, duration, or symptoms stemming from Acevedo's migraines.

[3] Acevedo testified that she suffers from migraines that occur weekly and can last up to "three or four days." Tr. 49. The medical record includes provider notes and assessments that Acevedo suffered from migraine headaches and received prescription medication to help relieve the migraine symptoms. Tr. 792–97. The record indicates that Acevedo reported up to "ten headache days a month." Tr. 792.

the Commissioner's argument, the record shows that Acevedo's headaches could medically equal a listing.

The Commissioner argues that "agency policy directs that the ALJ need state only that the impairments do not equal a listing" and that no further discussion on equivalence is necessary. Doc. 20 at 8. The Commissioner argues that the ALJ's findings and the record satisfy no requirement of listing 11.02B or 11.04B and that Acevedo identifies no basis for disturbing the ALJ's step three findings. Doc. 20. at 9–11. Finally, the Commissioner asserts that the ALJ's general statement about Acevedo's impairments not equaling a listing sufficiently articulates her findings. Doc. 20 at 10–11. These arguments are unpersuasive.

Although SSR 17-2p explains generally how an ALJ must evaluate an impairment's listing-level equivalency, SSR 19-4p specifically instructs ALJs on how to evaluate headache disorders. As written, the ALJ's decision presents no discussion on Acevedo's headache frequency, duration, or severity in accord with SSR 19-4p. The ALJ's blanket statement that she considered certain rulings and found no equivalency is insufficient and unsupported by the record. *See Keeton*, 21 F.3d at 1066. No single factor provided for in listing 11.02 is determinative; the evaluation process requires consideration of all requisite criteria. *See* SSR 19-4p, 2019 WL 4169635, at *7. The Commissioner's argument that an impairment must meet "all of the specified medical criteria" is misplaced. Regardless of the potential outcome, the fact that the record evidence showed Acevedo's migraines could potentially equal the listing criteria warranted evaluation under SSR 19-4p. *See id.*

Because the ALJ mentions none of the information required by the Social Security Rulings in determining that Acevedo's migraines fall short of listing 11.02B or 11.02D, I find that the ALJ failed to properly consider whether this impairment met or medically equaled a listing. *See* SSR 19-4p, 2019 WL 4169635, at *7; *Rice*, 2024 WL 4993583, at *6; *Martel*, 2025 WL 259344, at *4 ("[T]he balance of the ALJ's findings on the matter does not allow for meaningful review of the step three severity requirement or the ALJ's later RFC findings."). The ALJ's failure to consider medical equivalence at step three is not harmless, and thus, the case is remanded for further proceedings on Acevedo's migraines.

**B. The ALJ failed to consider all the limiting effects of Acevedo's fibromyalgia in accordance with SSR 12-2p.**

Social Security Ruling 12-2p provides a framework for determining whether a claimant has a medically determinable impairment of fibromyalgia. SSR 12-2p, 2012 WL 3104869 (Jul. 25, 2025). The Eleventh Circuit recognizes fibromyalgia as a unique impairment, because the impairment "often lacks medical or laboratory signs and is generally diagnosed mostly on a[n] individual's described symptoms." *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 863 (11th Cir. 2017). Thus, the ALJ should consider a "longitudinal record whenever possible" in evaluating the RFC for claimants with this impairment, because fibromyalgia's symptoms are inconsistent and cause "bad days and good days." SSR 12-2p, 2012 WL 3104869, at *6. An ALJ must "consider all relevant evidence in the case and all of a claimant's medically determinable impairments, including those that are not severe when

making an RFC determination." *Walbush v. Comm'r of Soc. Sec.*, No.: 8:23-cv-881-DNF, 2024 WL 3084337, at *4 (M.D. Fla. Jun. 21, 2024) (citing SSR 12-2p, 2012 WL 3104869, at *6). When determining a claimant's ability to work, the ALJ must "consider widespread pain or other symptoms associated with fibromyalgia (such as fatigue) and to be alert to the possibility that there may be exertion or nonexertional limitations, such as postural or environmental limitations." *Francis v. Saul*, No. 8:18-cv-2492-T-SPF, 2020 WL 1227589, at *3 (M.D. Fla. Mar. 13, 2020) (citing SSR 12-2p, 2012 WL 3104869, at *6). If no objective medical evidence supports a claimant's statements about the intensity, persistence, and limiting effects of her symptoms, the ALJ must consider the claimant's daily activities, medications or treatments, attempts to obtain medical treatment, and statements made by other people about the claimant's symptoms. *Walbush* 2024 WL 3084337, at *4 (citing SSR 12-2p, 2012 WL 3104869, at *5); *Francis*, 2020 WL 1227589, at *3.

Here, the ALJ deemed Acevedo's fibromyalgia a severe impairment, Tr. 13. However, the ALJ concluded that, even though Acevedo's medically determinable impairments, including fibromyalgia, "could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 17. The ALJ summarized the objective findings from exams conducted by The Arthritis Clinic, West Coast Musculoskeletal, Care One and Lifeguard Urgent Care, Dr. Kristien Polecritti, The Headache and Neurology Clinic, and Baycare Medical Group. Tr. 16–18. Although

the ALJ acknowledges that Acevedo presented "active enthesitis with 12 tender fibromyalgia points," she identifies only the general, objective findings from each provider and focuses on Acevedo's ambulation, movement, and mental health. Tr. 16–19. At no point does the ALJ consider any subjective testimony or evidence of Acevedo's fibromyalgia-related symptoms,[4] much less consider Acevedo's symptoms "in the context of her daily activities, medications or other treatments, the nature and frequency of medical treatment, and statements by third parties" as required by SSR 12-2p. *See Francis*, 2020 WL 1227589, at *3.

The Commissioner argues that the ALJ properly considered the limiting effects of Acevedo's fibromyalgia by saying that Acevedo possesses no disabling impairment. Doc. 20 at 15. But "[u]ndue emphasis on the lack of objective findings to substantiate a claimant's fibromyalgia-related reports constitutes error under well-established case law of this Circuit." *Francis*, 2020 WL 1227589, at *4 (citing *Witherell v. Berryhill*, No. 8:17-cv-2806-T-CPT, 2019 WL 1397927, at *4 (M.D. Fla. Mar. 28, 2019). The ALJ failed to consider "the fact that physical examinations for person's (sic) with fibromyalgia will usually yield normal results, e.g., a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *Id.* (citing *Johnson v. Colvin*, No. 1:14-cv-149-WS, 2015 WL 1931218, at

[4] Acevedo testified that her fibromyalgia flares cause stiffness, weakness, and a "burning sensation." Tr. 49. The medical record contains provider notes that Acevedo's reported pain came from her fibromyalgia and that she reported that her flares felt like her "skin is on fire." Tr. 766–71, 785, 789. The record also shows that Acevedo presented the typical "tender points" associated with fibromyalgia on multiple occasions. Tr. 785, 788, 789.

*9 (N.D. Fla. Apr. 27, 2015); *see also Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 63 (11th Cir. 2010) (stating that fibromyalgia "often lacks medical or laboratory signs[] and is generally diagnosed mostly on an individual's described symptoms."). Because the opinion fails to show that the ALJ complied with SSR 12-2p, I cannot ascertain whether the ALJ properly considered the evidence of Acevedo's fibromyalgia. *See Morrison v. Comm'r of Soc. Sec.*, 660 F. App'x 829, 834 (11th Cir. 2016) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review."); *Francis*, 2020 WL 1227589, at *4 (citing cases remanding an ALJ's decision for failure to follow or consider SSR 12-2p when evaluating a claimant's fibromyalgia). Therefore, I cannot determine whether substantial evidence supports the ALJ's decision. *See* 42 U.S.C. § 405(g); *Gray ex rel. Whymss*, 454 F. App'x at 750; *Winschel*, 631 F.3d at 1178. The ALJ's conclusory reasoning and failure to fully evaluate Acevedo's fibromyalgia symptoms according to the criteria of SSR 12-2p requires reversal and remand of her decision. *See Walbush,* 2024 WL 3084337, at *5.

**C. Acevedo's remaining issues**

Acevedo challenges the ALJ's consideration of the combined effect of her impairments and argues that the ALJ improperly excluded her mental and social interaction limitations from the evaluation. Doc. 16 at 20–24. On remand, the ALJ's reevaluation of Acevedo's impairments may affect this remaining issue. For that reason, I find that discussion of this issue is unnecessary. *See Demenech v. Sec. of the*

*Dep't of Health and Hum. Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (finding unnecessary the need to address a plaintiff's remaining arguments when the case is remanded on other grounds); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address issues that would be affected by the ALJ's reconsideration on remand); *Soto v. Dudek,* No. 6: 24-cv-87-JRK, 2025 WL 683683, at *1 (M.D. Fla. Mar. 4, 2025); *Seymore v. Comm'r of Soc. Sec*, No. 2:23-cv-70-KCD, 2023 WL 6619439, at *3 (M.D. Fla. Oct. 11, 2023); *Francis*, 2020 WL 1227589, at *4; *Bekiempis v. Colvin*, No. 8:16–cv–192–T–27TGW, 2017 WL 459198, at *5 (M.D. Fla. Jan. 17, 2017).

## V. Conclusion

Accordingly, the Commissioner's decision is **REVERSED** and **REMANDED** under 42 U.S.C. § 405(g) to the Commissioner for further proceedings. The Clerk is directed to enter judgment for Acevedo and against the Commissioner and to close the case.

**ORDERED** in Tampa, Florida, on the 24th day of March, 2025.

LINDSAY S. GRIFFIN
United States Magistrate Judge